Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/31/2019 09:06 AM CST

- 904 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

Michael Bauer, appellant, v. Genesis
Healthcare Group, appellee.

___ N.W.2d ___

Filed December 17, 2019.    No. A-18-1212.

1. **Workers' Compensation: Notice: Appeal and Error.** Where the underlying facts are undisputed, or if disputed, the factual finding of the trial court was not clearly erroneous, the question of whether Neb. Rev. Stat. § 48-133 (Reissue 2010) bars the claim is a question of law upon which the appellate court must make a determination independent of that of the trial court.

2. **Workers' Compensation: Notice.** Neb. Rev. Stat. § 48-133 (Reissue 2010) contemplates a situation where an employer has notice or knowledge sufficient to lead a reasonable person to conclude that an employee's injury is potentially compensable and that, therefore, the employer should investigate the matter further.

3. ____: ____. The purposes of the notice requirement of Neb. Rev. Stat. § 48-133 (Reissue 2010) are to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury and to facilitate the earliest possible investigation of the facts surrounding the injury.

4. **Words and Phrases.** "Practicable" generally means capable of being done, effected, or put into practice with the available means, i.e., feasible.

5. **Workers' Compensation: Notice: Words and Phrases.** The meaning of "as soon as practicable" under Neb. Rev. Stat. § 48-133 (Reissue 2010) depends upon the particular facts and circumstances of the case.

Appeal from the Workers' Compensation Court: J. Michael Fitzgerald, Judge. Affirmed.

Christopher R. Miller and Mark P. Grell, of Miller Grell Law Group, P.C., L.L.O., for appellant.

- 905 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

Jason A. Kidd, of Engles, Ketcham, Olson & Keith, P.C., for appellee.

Moore, Chief Judge, and Pirtle and Welch, Judges.

Welch, Judge.

## INTRODUCTION

In this workers' compensation case, Michael Bauer filed a claim for benefits against Genesis Healthcare Group (Genesis), concerning a shoulder injury he experienced while working as a physical therapy assistant. A trial judge of the Workers' Compensation Court determined that Bauer failed to give the required notice of injury to Genesis "as soon as practicable" after the occurrence and dismissed Bauer's petition. Bauer appeals the dismissal of his petition, arguing that the trial court erred in finding that he failed to give Genesis notice of his injury as soon as was practicable. Having determined, as a matter of law, that the trial court correctly determined that Bauer failed to give Genesis notice "as soon as practicable" as required by Neb. Rev. Stat. § 48-133 (Reissue 2010), we affirm the trial court's dismissal of Bauer's petition.

## STATEMENT OF FACTS

On September 15, 2017, Bauer was employed by Genesis as a director of rehabilitation and as a physical therapy assistant. On that date, while assisting a patient in a wheelchair, Bauer felt a "sharp pain" and a "sudden pop" in his right shoulder together with a "burning kind of numbness" that went down his right arm. Bauer testified that he told his coworker that he "'tore a muscle or something'" and was advised to file a report. Bauer did not immediately file a report. He testified that he was concerned about his job status and did not want to "rock the boat" by reporting the injury. Instead, he testified that he believed he could handle it on his own. Later that day, Bauer went to the gym to try to work out his arm. The following weekend, Bauer canceled a planned trip to a Nebraska football game, placed ice on the impacted area, and utilized a

- 906 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

set of pulleys at his home to work on his range of motion. Due to his ability to set his own work schedule, Bauer placed himself on light duty for the week following the incident.

On September 25, 2017, Bauer was informed by his employer that he was being placed on administrative leave and instructed that his position might be eliminated but that he would be considered for other director of rehabilitation positions in the state if one should become available. Bauer testified that, at that time, his arm was still sore, but he continued to believe he had a minor sprain or strain. He continued to try and rehabilitate his injury by pursuing aquatic therapy on his own.

Bauer testified that on October 1, 2017, while working at his family farm and attaching a blade to a tractor, he felt pain and a "pop" in the same shoulder. He testified that he was being "hardheaded" about seeing a doctor, but at the urging of his wife, he first sought treatment for his shoulder on October 6 at a clinic in McCook, Nebraska. At the clinic, he was examined by a physician assistant, who stated in her medical note: "The onset of the shoulder pain has been sudden following an incident not at work and has been occurring in a persistent pattern for 5 days. The course has been without change. The shoulder pain is severe. The shoulder pain is characterized as a sharp stabbing." The physician assistant suggested that Bauer have a CT scan of the shoulder and that Bauer contact an orthopedic surgeon.

Bauer made an appointment to see Dr. Jeffrey Tiedeman, an orthopedic surgeon in Omaha, Nebraska. In his office notes governing the visit on October 20, 2017, Dr. Tiedeman indicated Bauer "was injured when he was putting a blade on the back of his tractor on 10-1-17. He felt a pop in his shoulder and a burning sensation that radiated from the shoulder all [the] way down to his hand." The note of the visit also indicated, "[Bauer] wasn't experiencing any significant problems with his shoulder before this episode." At trial, Bauer stated that he did not initially tell Dr. Tiedeman about any work

- 907 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

injury. Bauer stated that he purposefully misled his doctors to avoid his employer's discovering his work injury.

Following the visit, Dr. Tiedeman opined that Bauer was injured when he was putting a blade on the back of his tractor. His impression was that Bauer had suffered a "[r]otator cuff tear right shoulder with possible associated biceps tendinopathy." He then recommended a CT scan with an arthrogram component in order to obtain "better definition" governing the status of the rotator cuff.

Bauer testified that on Friday, October 20, 2017, following his appointment with Dr. Tiedeman, he called Genesis to report the injury but was unable to reach the appropriate person. He then reported the injury on Monday, October 23, and filed a written report the following day.

The CT scan was performed on October 30, 2017. The radiologist's impression was that there was no evidence of a rotator cuff tear or retraction, there was a "[m]edial subluxation of the biceps tendon with superficial partial tear and suspected overlying subscapularis tendon tear," and there was an "anterior capsular laxity with evidence of multidirectional instability possibly with small intra-articular loose body and partial tear/laxity of the middle glenohumeral ligament." After Dr. Tiedeman reviewed the CT scan on November 3, he opined that there "did not appear to be any full-thickness tear of the rotator cuff," but he noted "some subluxation of the biceps tendon and likely a partial-thickness tear of the upper border of the subscapularis."

After Bauer returned to Dr. Tiedeman on November 20, 2017, for a followup evaluation, Dr. Tiedeman diagnosed a "[b]iceps tendon subluxation with rotator cuff tendinopathy right shoulder." Dr. Tiedeman stated that they could manage the symptoms conservatively or pursue a surgical approach. At this visit, Bauer advised Dr. Tiedeman, for the first time, that Bauer believed he may have actually injured his shoulder initially in mid-September when he was "lifting a patient at work."

- 908 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

On April 4, 2018, Dr. Tiedeman opined that "more likely than not," the work accident caused or contributed to Bauer's right shoulder injury.

Following the trial, the court found that Bauer injured his right shoulder in an accident arising out of and in the course of his employment with Genesis on September 15, 2017. However, the court found that Bauer did not provide notice of the injury to Genesis "as soon as practicable" as required by § 48-133 and dismissed the case. Bauer appeals.

## ASSIGNMENT OF ERROR

Bauer contends that the Workers' Compensation Court erred in finding that he failed to give Genesis notice of his injury as soon as was practicable.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Greenwood v. J.J. Hooligan's*, 297 Neb. 435, 899 N.W.2d 905 (2017).

[1] Where the underlying facts are undisputed, or if disputed, the factual finding of the trial court was not clearly erroneous, the question of whether § 48-133 bars the claim is a question of law upon which the appellate court must make a determination independent of that of the trial court. *Unger v. Olsen's Ag. Lab.*, 19 Neb. App. 459, 809 N.W.2d 813 (2012).

## ANALYSIS

Section 48-133 provides, in relevant part:

> No proceedings for compensation for an injury under the Nebraska Workers' Compensation Act shall be

- 909 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

maintained unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof . . . . Want of such written notice shall not be a bar to proceedings under the Nebraska Workers' Compensation Act, if it be shown that the employer had notice or knowledge of the injury.

As such, the trial court correctly dismissed Bauer's claim if it correctly found that Bauer did not report his injury suffered on September 15, 2017, to his employer "as soon as practicable." This court had occasion to examine the meaning of the phrase "as soon as practicable" in *Williamson v. Werner Enters.*, 12 Neb. App. 642, 682 N.W.2d 723 (2004). In *Williamson*, we noted:

> The requirement that notice be given "as soon as practicable" has been a part of the workers' compensation statutes since their inception in 1913. See Rev. Stat. § 3674 (1913). In discussing the requirements of § 3674, the Nebraska Supreme Court stated in *Good v. City of Omaha*, 102 Neb. 654, 655-56, 168 N.W. 639 (1918): "[T]he requirement of the statute is only what a person acting in good faith would be likely to do without a statute. One receiving an injury, for which he expects to hold another liable, would feel called upon, as soon as practicable after receiving the injury, to give the other notice of it, and would feel called upon, as soon as he knew the nature and extent of his injury, to make his demand for compensation. In courts of justice, the good faith of a claim is always more or less discredited by the fact that no immediate demand was made or that prosecution was long delayed. The employer is entitled to an early demand, so that he may know the nature and amount of the claim; may settle it, if possible, or, if not, may investigate the facts and preserve his evidence."

12 Neb. App. at 646, 682 N.W.2d at 727.

- 910 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

[2,3] We further stated in *Williamson*:

The Nebraska Supreme Court stated in *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 65, 541 N.W.2d 49, 53 (1995), that "[§] 48-133 [(Reissue 1993)] contemplates a situation where an employer has notice or knowledge sufficient to lead a reasonable person to conclude that an employee's injury is potentially compensable and that, therefore, the employer should investigate the matter further." The *Scott* court also stated that a lack of prejudice is not an exception to the requirement of notice under § 48-133. The purposes of the notice requirement are "[f]irst, to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury." 7 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 126.01 (2003).

12 Neb. App. at 648, 682 N.W.2d at 728.

In *Williamson*, we reviewed authority from other jurisdictions analyzing the phrase "as soon as practicable" and cited extensively to a Kentucky Court of Appeals' case, where that court concluded that an employee's notice provided 54 days after the employee's injury was not provided "as soon as practicable":

"[I]t is our view that that part of the statute requiring notice of an injury to be given as soon as practicable is as mandatory in its nature as it is in requiring notice at all, and if there is delay in giving notice, the burden is upon the injured person to show that it was not practicable to give notice sooner. While the rule of liberal construction will be applied to the workmen's compensation statutes, yet, liberal construction does not mean total disregard for the statute, or repeal of it under the guise of construction. And furthermore, it must not be forgotten that the very nature of appellant's injury was such that [the injury] needed immediate attention. Hernia is a

- 911 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

progressive injury and will increase with time. Whether or not appellant's hernia was an old one or a fresh one sustained at the time he claims was indeed of much importance to appellee, since, if it was of the former class, appellee would not have been liable. And, if appellant had received immediate treatment, his disability, in all reasonable probability, might have been lessened if not entirely cured. Appellee was entitled to the benefit of an early opportunity to ascertain whether appellant sustained the hernia at the time claimed by him or whether it existed previous[ly] thereto, and also an opportunity to have him treated in an effort to cure, or, at the least, minimize the extent of his disability."

12 Neb. App. at 649, 682 N.W.2d at 729, quoting *Buckles v. Kroger Grocery & Baking Co.*, 280 Ky. 644, 134 S.W.2d 221 (1939).

Here, there is no dispute of fact in the record as it relates to the timing of the accident, injuries, and reporting. Bauer sustained the first injury to his shoulder on September 15, 2017, while assisting a patient in a wheelchair. Bauer admittedly did not report the injury to Genesis and intentionally did not report the work-related accident until October 23, which was after he injured the same shoulder in a non-work-related farm accident, after he had been placed on administrative leave, and after, he argues, he first realized his injury was more serious than he originally thought. Accordingly, we must now independently determine, as a matter of law, whether under these facts, Bauer reported the September 15 injury "as soon as practicable."

[4] We are mindful of our various pronouncements in *Williamson v. Werner Enters.*, 12 Neb. App. 642, 652, 682 N.W.2d 723, 731 (2004), including the dictionary definition of the word "'[p]racticable'" as generally meaning "capable of being done, effected, or put into practice with the available means, i.e., feasible. Webster's Encyclopedic Unabridged Dictionary of the English Language 1127 (1989)." We are

- 912 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

also mindful of our ultimate holding in *Williamson*, where we said:

> Viewed in the light most favorable to Werner, the facts show that Williamson experienced an unusual event. He promptly perceived substantial pain that he connected with the event. Within days, he sought chiropractic treatment. The chiropractic record shows that Williamson attributed the pain to the event. Even if we assume that a liberal construction requires allowance of some time between that perception and the first instance of reporting, the period from December to May exceeds the outer limit of any reasonable delay. Williamson presented no evidence showing that it was not "practicable" to give notice to Werner soon after he sought chiropractic treatment for severe pain that he attributed to the incident. We conclude that it was practicable to report the injury within a reasonable time after Williamson sought chiropractic treatment for the perceived pain which he related to the load-shifting incident and that Williamson failed to do so. The trial court correctly determined that Williamson failed to give notice as soon as practicable.

12 Neb. App. at 653, 682 N.W.2d at 731-32.

We likewise reach the same conclusion here. Although we are somewhat troubled by the shorter length of time between the September 15, 2017, accident and the October 23 report, we note that Bauer, an experienced physical therapy assistant, perceived an immediate injury to his shoulder which he sustained while assisting a patient in a wheelchair on September 15. Although Bauer argues that he did not perceive the injury to be serious, he attributed significant pain and numbness from it, canceled weekend plans to treat it, attempted to personally rehabilitate it, and changed his own work schedule to accommodate it. By his own admission, Bauer intentionally chose to not report the injury not because it was not practicable, but because he did not want to "rock the boat." In fact, he decided to report it only after being placed on administrative

- 913 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

leave and only after further injury to his shoulder on October 1 following the period of time when he could have reported the first injury and chose not to. In finding that Bauer's report was not "as soon as practicable," we again refer to our quote from Professor Larson in *Williamson*:

> The purposes of the notice requirement are "[f]irst, to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury." 7 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 126.01 (2003).

12 Neb. App. at 648, 682 N.W.2d at 728. Here, under these facts, Genesis was potentially compromised by Bauer's decision not to report his injury. First, had Bauer reported his injury and sought treatment, a medical professional could have examined the nature and extent of the injury and perhaps cautioned Bauer against the type of use which resulted in the October 1, 2017, injury. Second, Genesis would have been in a better position to investigate the nature and extent of the injury on September 15 and better able to defend against Bauer's claim first reported after the October 1 farm injury. Genesis was compromised by not having an opportunity to review the injury prior to October 1. Accordingly, it is not the specific length of time in reporting the injury here (just over 30 days) which results in our findings, but the nature of all the circumstances which dictate the result. We conclude that it was practicable for Bauer to report his injury within a reasonable period of time following his September 15 injury and that he failed to do so. Consequently, the trial court correctly determined that Bauer failed to give notice to Genesis "as soon as practicable."

[5] The dissent argues that "the majority appears to establish a new 'fixed time' for reporting a workplace injury based on the special knowledge of a particular plaintiff in a case, shortening the 'as soon as practicable' requirement from

- 914 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

4 months to a number of days." However, as this court previously held in construing the meaning of the phrase "as soon as practicable":

> The Nebraska Supreme Court considered an analogous question in *Cobbey v. Buchanan,* 48 Neb. 391, 67 N.W. 176 (1896), where the court determined that the meaning of the term "necessaries" cannot be fixed by a general rule applicable to all cases and that the question of the term's meaning is a mixed one of law and fact to be determined in each case from the particular facts and circumstances of the case. Here, the trial court reached its determination after weighing credibility and determining which version of the facts to accept. Just as the meaning of "necessaries" depends upon the particular facts and circumstances, so does the meaning of "as soon as practicable."

*Williamson v. Werner Enters.*, 12 Neb. App. 642, 652, 682 N.W.2d 723, 731 (2004).

Accordingly, the question is not about how many days, weeks, or months elapse from the time of the injury until the reporting date, but whether the claimant reported the injury "as soon as practicable" under the specific facts and circumstances of this case. In that regard, the dissent makes mention of Bauer's failure to report his injury so as not to "rock the boat" in relation to his tenuous employment and his lack of medical diagnosis as being factors which support a finding that it was not "practicable" for Bauer to report his injury to his employer until October 23, 2017. We discuss these factors independently.

First, although we are sympathetic to Bauer's apparent tenuous employment situation at the time that he was injured, we do not construe Bauer's perception of the instability of his employment as impacting the "practicability" of reporting the incident. As we stated in *Williamson*:

> "Practicable" generally means capable of being done, effected, or put into practice with the available means, i.e., feasible. Webster's Encyclopedic Unabridged

- 915 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

Dictionary of the English Language 1127 (1989). It has also been described as meaning possible or feasible, able to be done, or capable of being put into practice. *Id.* 12 Neb. App. at 652, 682 N.W.2d at 731.

Second, the dissent suggests "I think the 'practicability' language in § 48-133 is workable in all situations by considering the reasonableness of the employee's actions in seeking treatment, in conjunction with some medical pronouncement of the seriousness of the injury which includes a course of treatment." Although we recognize that there has to be a degree of injury which places the employee on notice that he or she is injured, we disagree that the word "practicable" necessarily incorporates notions of treatment or medical pronouncement. Instead the question is whether, under the facts and circumstances of each case, the claimant reported the injury "as soon as practicable."

We see this case as similar to *Williamson, supra*, where we ultimately held that the worker's experiencing of an unusual event where he promptly perceived substantial pain that he connected with the event for which he sought chiropractic treatment in which he related pain to the event was sufficient to place him on notice of his injury and triggered his reporting requirement "as soon as practicable" thereafter.

Likewise, here, Bauer injured himself on September 15, 2017; knew he injured himself; promptly perceived pain which he connected with the event; and engaged in self-treatment activities to rehabilitate himself. Although he did not seek medical assistance right away, he testified that even after he aggravated the injury, he was reluctant to seek medical treatment because he was being "hardheaded." Importantly, Bauer specifically testified that he did not then report the incident, not because he did not deem himself injured, but because he did not want to "rock the boat." Stated differently, under these facts, Bauer admittedly failed to report the work-related injury to his employer (and even delayed reporting the work-related event to his doctors for a period of time once he sought

- 916 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

treatment) not because it was not feasible, but because of his conscious decision not to. Under these specific facts, we find Bauer failed to report his injury "as soon as practicable."

## CONCLUSION

Having determined as a matter of law that the trial court correctly found that Bauer failed to give his employer, Genesis, notice "as soon as practicable" as required by § 48-133, we affirm the trial court's dismissal of Bauer's petition.

AFFIRMED.

PIRTLE, Judge, dissenting.

There is an old saying in the law: "Difficult cases make bad law." This case is a prime example of that. For the reasons that follow, I respectfully dissent from the majority's determination that the trial court correctly denied benefits to Bauer for failing to notify his employer of his workplace injury "as soon as practicable" as required by Neb. Rev. Stat. § 48-133 (Reissue 2016). Furthermore, the majority appears to establish a new "fixed time" for reporting a workplace injury based on the special knowledge of a particular plaintiff in a case, shortening the "as soon as practicable" requirement from 4 months to a number of days. See, § 48-133; *Williamson v. Werner Enters.*, 12 Neb. App. 642, 682 N.W.2d 723 (2004).

The majority's finding is especially harsh when all the facts and circumstances surrounding Bauer's failure to report the incident immediately and his reluctance to "rock the boat" are fully understood. Bauer had reason to believe that ever since the spring of 2017, his employment was in jeopardy and his decision to try to rehabilitate himself was a hedge against retaliation and possible termination. Bauer testified his manager was under investigation by corporate human resources officials for some sort of misconduct. Bauer was asked to submit to an interview as part of the investigation. Initially, Bauer refused, telling the corporate officials that he was afraid anything he said would "[get] back to" his manager, which

- 917 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

he feared would result in some sort of workplace retaliation. The corporate officials reassured Bauer they would keep his confidences, but "within three weeks [his manager's] demeanor [toward him] changed dramatically." In July, she gave him an unfavorable performance report, and then, she "wrote [him] up," alleging Bauer had failed to provide coverage for his post. Bauer testified he did not want to report the workplace injury initially because he was afraid the natural consequence of the report under these conditions would be loss of employment.

On September 25, 2017, which was 10 days after his injury, Bauer was summoned to meet with the manager he had been interviewed about in the spring. During this meeting, Bauer was placed on administrative leave. Bauer was under the impression it was a money-saving move, since the manager said she would perform Bauer's duties as well as her own. But 2 weeks after being placed on leave, Bauer became aware the company had hired a new person to do the job Bauer had been doing. If this was a wrongful discharge case of some type, Bauer would be entitled to an inference that if he had reported the incident on the day it happened, and if the administrative leave and the hiring of a new person followed closely thereafter, reporting the accident was causally connected to his loss of employment.

By the time Bauer sought treatment for his injury, he had already been placed on administrative leave but had not yet learned his job had been given to someone new. In fact, he was still waiting for a call to return to work, since the manager said "the phone could ring anytime," and he had not been fired. Bauer testified he feared attributing the injury to the workplace would "rock the boat" and impair his chances of being brought back to work.

Bauer learned he had been replaced about 2 weeks after September 25, 2017. His first appointment with the orthopedic surgeon was on October 20, and on October 23, Bauer reported the injury to Genesis. Until that point, Bauer thought

- 918 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

he could rehabilitate himself using weights, pulleys, and aqua therapy. I appreciate Bauer's reluctance to report the injury on the day it happened and his unwillingness to attribute the injury to the workplace when seeking treatment. I interpret his silence as self-preservation through October 23, rather than some devious, intentional withholding of information designed to prejudice the employer as the majority suggests. By then, even though he still did not know the seriousness of the injury, he had nothing to lose by reporting the injury, since he had been replaced and had started talking to other potential employers.

I am also troubled by the majority's narrowing of the timeframe for reporting workplace injuries for workers with specialized knowledge, since it may just be a matter of the "right case" which narrows the reporting period for a worker without such awareness. Since Bauer is an experienced physical therapy assistant, the new rule for reporting for a plaintiff like Bauer is "immediately." This standard is unfair given the "beneficent purpose" and the "consistently . . . liberal construction" of the Nebraska Workers' Compensation Act and the uniqueness of every plaintiff and every injury. See *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 431, 657 N.W.2d 634, 640 (2003).

I note with interest that *Williamson v. Werner Enters.*, 12 Neb. App. 642, 682 N.W.2d 723 (2004), was also a split decision. The dissent analyzes § 48-133 in its past and present form as evidence of a legislative intent that courts be flexible in their application of "practicability" to different injuries and different bodies. Prior to its present language, § 48-133 included a provision that required not only a reporting "as soon as practicable" but also that "the claim for compensation with respect to such injury shall have been made within six months after the occurrence." § 48-133 (1943). In 1977, this 6-month provision was removed, leaving the statement first included in 1917 that "all disputed claims for compensation or benefits shall be first submitted" to the workers'

- 919 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

compensation court. See § 48-133 (Reissue 1978). In addition to deleting the requirement that employees file a claim within 6 months, the Legislature changed § 48-133 by adopting 1977 Neb. Laws, L.B. 144, and extending the time in which employees have to file a petition from 1 year to 2 years. These changes give us an insight into the ongoing liberal interpretation of all aspects of the workers' compensation law. See *Williamson, supra*. And in floor debate in support of L.B. 144, the sponsor, Senator Bill Brennan, said: "A person can't report an accident until he has knowledge of the seriousness of the accident." Floor Debate, L.B. 144, 85th Leg., 1st Sess. 537 (Feb. 15, 1977).

In my judgment, even with his special knowledge and experience, Bauer did not appreciate the significance of his injury until November 20, 2017. At that point, Bauer learned he had suffered a "[b]iceps tendon subluxation with rotator cuff tendinopathy," which could be managed conservatively or resolved surgically. But by then, Genesis had already been on notice of the injury for a month, a mere 38 days from the date of the accident. Bauer had given sufficient notice to Genesis for it to do its own investigation and to get up to speed with any treatment recommendations.

My interpretation of the legislative message at the time *Williamson* was decided was as follows:

6 months from the date of injury to the date of the report could be too short a timeframe in some situations, so that portion of the statute should come out, but a claimant must be sure to file a petition with the compensation court within 2 years of the incident, even if the seriousness of the injury is still unknown.

I construe § 43-133 the same way today. The Legislature has had plenty of opportunity to further restrict the reporting requirements in the years since the *Williamson* decision when the court concluded that 4-plus months before reporting "exceeds the outer limit of any reasonable delay," but to date it has not done so. 12 Neb. App. at 653, 682 N.W.2d at 732.

- 920 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
BAUER v. GENESIS HEALTHCARE GROUP
Cite as 27 Neb. App. 904

I too would have dissented in *Williamson*, since I believe fixing an "outside edge" for reporting an injury is contrary to a determination of what is "practicable." And now, the narrowing of the reporting period so drastically yet again sets a dangerous precedent and upsets the Legislature's intent that § 48-133, and the Nebraska Workers' Compensation Act in its entirety, be construed liberally and in the worker's favor.

I think the "practicability" language in § 48-133 is workable in all situations by considering the reasonableness of the employee's actions in seeking treatment, in conjunction with some medical pronouncement of the seriousness of the injury which includes a course of treatment. The flexibility of the statute when applied to facts in any case, with any kind of plaintiff and any kind of injury, satisfies the purpose of the workers' compensation statutes—to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease.

Therefore, I would reverse the decision by the trial court and remand the cause with directions to the trial court to determine the benefits Bauer is entitled to under the law. I believe the trial court was clearly wrong in denying Bauer benefits, and I fear the ramifications of the majority's position will have far-reaching and dire consequences for workers which is contrary to the intent of the Nebraska Workers' Compensation Act. And, I would encourage the Nebraska Supreme Court and/or the Nebraska Legislature to further review and rectify the injustice done by shortening so severely the time for reporting a workplace injury, especially given that two divided Court of Appeals' panels have now created continued uncertainty for current and future litigants and practitioners.